## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE REGISTERED
HOLDERS OF AEGIS ASSET BACKED
SECURITIES TRUST, MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2005-5,**

                    **Plaintiff,**

**v.**                                                    **CASE No. 17-cv-00141-WES-PAS**

**GILBERT LANTINI, II; PROVIDENCE
WATER SUPPLY BOARD ACTING BY
AND THROUGH THE CITY OF
PROVIDENCE,**

_____**Defendants.**_____/

### AFFIDAVIT OF WALTER H. PORR, JR., IN
### SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I, Walter H. Porr, Jr., depose on oath as follows:

1.      I am attorney associated with the law firm of Korde & Associates, P.C. (the "Firm") in Lowell, Massachusetts and have been duly licensed to practice law in the State of Rhode Island since 2013 (RI Bar # 8967).  I am the attorney of record for Plaintiff, U.S. Bank in this matter.

2.      On December 19, 2017, I accessed the official government website for the Office of the Comptroller of the Currency (OCC) and more specifically the Website/Webpage for Financial Institution Lists regulated by the OCC.   A true and accurate copy of said Website/Webpage is attached hereto as Exhibit 1.  I then accessed the PDF version of the National Banks & Federal Branches and Agencies active as of 11/30/2017 and downloaded a full and complete copy of the same.  I then located the page which listed U.S. Bank National Association as a National/Federally Chartered Bank.  A true and accurate copy of said page is attached hereto as Exhibit 2.

1

3.      I then accessed the official government website for the Federal Deposit Insurance Corporation Official Website/Webpage and conducted a "Bank Find" search for U.S. Bank and then downloaded the Website/Webpage which also identifies U.S. Bank National Association as a National/Federally Chartered Bank.  A true and accurate copy of said Website/Webpage is attached hereto as Exhibit 3.

4.      On February 2, 2018, I accessed the official government website for the United States Securities and Exchange Commission and conducted an EDGAR search for the Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5, securitization.  Upon locating this securitization, I downloaded a copy of the Form 8-K related to the filing of the Pooling and Servicing Agreement and a true and accurate copy of same is attached hereto as Exhibit 4.  I then downloaded the Pooling and Servicing Agreement itself.  I then prepared an excerpt of the relevant provisions of the Pooling and Servicing Agreement for purposes of the motion for summary judgment and the same is attached hereto as Exhibit 5.

_____
Walter H. Porr, Jr., Esq.

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF MIDDLESEX

On this 16th day of March, 2018, before me, the undersigned Notary Public, personally appeared Walter H. Porr, Jr., personally known to the Notary to be the person who signed above in my presence and who swore or affirmed to the Notary that the contents of the document are truthful to the best of her knowledge.

ROBIN A. GILMARTIN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 3, 2023

Notary Public: _____
Robin A. Gilmartin

My commission expires: _____
2/3/23

2

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2018, I caused this document to be filed through the electronic filing system with electronic service completed on all parties registered therein to receive notice in this case.

The document electronically filed and served is available for viewing and/or downloading from the United State District Court for the District of Rhode Island's Electronic Case Filing System.

/s/ Walter H. Porr, Jr., Esq.
Walter H. Porr, Jr., Esq.,

# EXHIBIT 1



**Office of the
Comptroller of the Currency**

U.S. Department of the Treasury [https://occ.gov/index.html]

**Financial Institution Lists**

National banks and federal savings associations are chartered and regulated by the Office of the Comptroller of the Currency.

- **National Banks & Federal Branches and Agencies active as of 11/30/2017**
  - sorted by bank name: Excel | PDF
  - sorted by state and city: Excel | PDF
- **Credit Card Banks active as of 11/30/2017**
  - sorted by bank name: Excel | PDF
  - sorted by state and city: Excel | PDF
- **Trust Banks active as of 11/30/2017**
  - sorted by bank name: Excel | PDF
  - sorted by state and city: Excel | PDF
- **Federal Savings Associations active as of 11/30/2017**
  - sorted by bank name: Excel | PDF
  - sorted by state and city: Excel | PDF

Check the list of National Bank Operating Subsidiaries [https://www.helpwithmybank.gov/national-banks/operating-subsidiaries/national-banks-subsidiaries-a-m.html] on OCC's website HelpWithMyBank.gov [https://www.helpwithmybank.gov/index.html].

To search by specific bank name, the Federal Financial Institutions Examinations Council (FFIEC) offers a financial institution search [https://www.ffiec.gov/consumercenter/default.aspx].

If your bank is not a national bank or federal savings association, you should contact the appropriate regulator.

- Credit Unions - The National Credit Union Administration [http://www.ncua.gov] supervises and insures federal credit unions and insures State-chartered credit unions.
- State banks - Two federal agencies share responsibility for state banks.
  - The Federal Deposit Insurance Corporation [http://www.fdic.gov] supervises state-chartered banks that are not members of the Federal Reserve System and State-chartered savings associations. The FDIC also insures deposits in banks and savings associations in the event of bank failure.
  - The Federal Reserve Board [http://www.federalreserve.gov/] supervises state-chartered banks that are members of the Federal Reserve System.
- State banks are also supervised by state banking regulators. Visit the Conference of State Bank Supervisors website [http://www.csbs.org/Pages/default.aspx] for links to state banking departments.

**Related News and Issuances**

11/07/2017     OCC 2017-50,   Subordinated Debt: Revised Comptroller's Licensing Manual Booklet

10/31/2017     OCC 2017-49,   Subsidiaries and Equity Investments: Revised Comptroller's Licensing Manual Booklet

08/23/2017     OCC 2017-30,   Substantial Asset Changes, Including Changes in Charter Purpose: New Comptroller's Licensing Manual Booklet

# EXHIBIT

# 2

## National Banks Active As of 11/30/2017

| CHARTER NO | NAME | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|
| 8709 | 1st National Bank | Lebanon | OH | 6646 | 480723 |
| 12471 | The Neffs National Bank | Neffs | PA | 7646 | 144913 |
| 7005 | The Northumberland National Bank | Northumberland | PA | 7666 | 70414 |
| 11780 | The Old Exchange National Bank of Okawville | Okawville | IL | 3827 | 411240 |
| 12267 | The Old Point National Bank of Phoebus | Hampton | VA | 6892 | 186221 |
| 9179 | The Park National Bank | Newark | OH | 6653 | 489623 |
| 7892 | The Pauls Valley National Bank | Pauls Valley | OK | 4173 | 454658 |
| 15733 | The Pennsville National Bank | Pennsville | NJ | 19978 | 828110 |
| 10051 | The Peoples National Bank of Checotah | Checotah | OK | 4059 | 942454 |
| 6667 | The Peoples National Bank of Mount Pleasant | Mount Pleasant | OH | 6649 | 484927 |
| 13596 | The Peoples National Bank of New Lexington | New Lexington | OH | 6659 | 431323 |
| 11595 | The Perryton National Bank | Perryton | TX | 3388 | 8462 |
| 5658 | The Peshtigo National Bank | Peshtigo | WI | 5317 | 257345 |
| 13078 | The Pioneer National Bank of Duluth | Duluth | MN | 5130 | 378558 |
| 22926 | The Private Trust Company, National Association | Cleveland | OH | 34057 | 2328285 |
| 976 | The Putnam County National Bank of Carmel | Carmel | NY | 6990 | 287007 |
| 5413 | The Rawlins National Bank | Rawlins | WY | 2228 | 548052 |
| 5267 | The Riddell National Bank | Brazil | IN | 4318 | 319047 |
| 6185 | The Roberts County National Bank of Sisseton | Sisseton | SD | 4019 | 433158 |
| 8905 | The Salyersville National Bank | Salyersville | KY | 2723 | 472018 |
| 13854 | The Santa Anna National Bank | Santa Anna | TX | 5520 | 521064 |
| 14315 | The Security National Bank of Enid | Enid | OK | 14966 | 119153 |
| 3124 | The Security National Bank of Sioux City, Iowa | Sioux City | IA | 4506 | 418249 |
| 9859 | The Somerville National Bank | Somerville | OH | 6700 | 411624 |
| 13022 | The State National Bank in West | West | TX | 5580 | 494168 |
| 12543 | The State National Bank of Big Spring | Big Spring | TX | 3103 | 169354 |
| 12742 | The State National Bank of Groom | Groom | TX | 3237 | 460556 |
| 4137 | The Stephenson National Bank and Trust | Marinette | WI | 5306 | 598048 |
| 24092 | The Tipton Latham Bank, National Association | Tipton | MO | 1941 | 984856 |
| 22281 | The Trust Company of Toledo, National Association | Holland | OH | 33239 | 1820979 |
| 9803 | The Turbotville National Bank | Turbotville | PA | 7789 | 906410 |
| 22241 | The University National Bank of Lawrence | Lawrence | KS | 32606 | 1229198 |
| 12018 | The Upstate National Bank | Ogdensburg | NY | 13748 | 313009 |
| 2036 | The Vinton County National Bank | McArthur | OH | 6636 | 754826 |
| 5203 | The Waggoner National Bank of Vernon | Vernon | TX | 5569 | 548267 |
| 8694 | The Yoakum National Bank | Yoakum | TX | 5595 | 311265 |
| 22883 | Thomasville National Bank | Thomasville | GA | 34068 | 2344753 |
| 15817 | Thumb National Bank and Trust Company | Pigeon | MI | 14513 | 698649 |
| 25143 | TIB The Independent BankersBank, National Association | Farmers Branch | TX | 23647 | 529958 |
| 12437 | Titan Bank, National Association | Mineral Wells | TX | 3225 | 328357 |
| 24789 | Touchmark National Bank | Alpharetta | GA | 58687 | 3645840 |
| 16708 | Town-Country National Bank | Camden | AL | 22621 | 180537 |
| 18358 | Trans Pacific National Bank | San Francisco | CA | 25644 | 403067 |
| 15738 | Tri City National Bank | Oak Creek | WI | 18922 | 242444 |
| 17926 | Triad Bank, National Association | Tulsa | OK | 24677 | 283652 |
| 24397 | Trinity Bank, National Association | Fort Worth | TX | 57543 | 3185896 |
| 10523 | Trustmark National Bank | Jackson | MS | 4988 | 342634 |
| 24 | U.S. Bank National Association | Cincinnati | OH | 6548 | 504713 |
| 23412 | U.S. Bank Trust Company, National Association | Portland | OR | 34588 | 2567123 |
| 24090 | U.S. Bank Trust National Association | Wilmington | DE | 57047 | 2916963 |
| 23604 | U.S. Bank Trust National Association SD | Sioux Falls | SD | 34813 | 2667920 |

# EXHIBIT

# 3

# U.S. Bank National Association (FDIC # 6548)

**Active** **Insured Since January 1, 1934**

**Data as of:** December 13, 2017

    **U.S. Bank National Association** is an active bank

| | |
|---|---|
| **FDIC Certificate#:** | **6548** |
| **Headquarters:** | 425 Walnut Street<br>Cincinnati, OH 45202<br>Hamilton County |
| **Locations:** | **3166** domestic in **28** states,<br>**0** in territories, and **1** in foreign locations |
| **Established:** | July 13, 1863 |
| **Insured:** | January 1, 1934 |
| **Bank Charter Class:** | National Bank |
| **Primary Federal Regulator:** | Office of the Comptroller of the Currency |
| **Secondary Federal Regulator:** | Consumer Financial Protection Bureau |

  **Corporate Website:**
  http://www.usbank.com

  **Consumer Assistance:**
  http://www.helpwithmybank.gov

  **Contact the FDIC about:**
  U.S. Bank National Association

| Locations | History | Identifications | Financials | Other Names /<br>Websites |
|---|---|---|---|---|

**Showing 1 to 25 of 3,167 entries**

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type | Established Date | Acquired Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 207514 | 795 | Cayman Island Branch (Frgn) | Bank Of Nova Scotia Trust Company | | Georgetown | | | Full Service Brick and Mortar Office | 04/30/1981 | 10/15/1999 |
| 189276 | 873 | Alma Branch | 115 Highway 64 West | Crawford | Alma | AR | 72921 | Full Service Brick and Mortar Office | 10/31/1988 | 03/07/2000 |
| 8498 | 890 | Arkadelphia Main Street Branch | 526 Main Street | Clark | Arkadelphia | AR | 71923 | Full Service Brick and Mortar Office | 08/01/1911 | 03/07/2000 |
| 229699 | 891 | West Pine Branch | 2701 Pine Street | Clark | Arkadelphia | AR | 71923 | Full Service Brick and Mortar Office | 02/21/1974 | 03/07/2000 |
| 180986 | 893 | Bismarck Branch | 6677 Highway 7 | Hot Spring | Bismarck | AR | 71929 | Full Service Brick and Mortar Office | 07/25/1995 | 03/07/2000 |
| 180991 | 896 | Bryant Branch | 100 Commerce St. | Saline | Bryant | AR | 72022 | Full Service Brick and Mortar Office | 07/01/1997 | 03/07/2000 |
| 44058 | 865 | Conway Main Branch | 1122 Van Ronkle Street | Faulkner | Conway | AR | 72032 | Full Service Brick and Mortar Office | 01/01/1960 | 03/07/2000 |
| 283848 | 866 | Conway West Branch | 2620 Prince Street | Faulkner | Conway | AR | 72032 | Full Service Brick and Mortar Office | 01/01/1960 | 03/07/2000 |
| 14637 | 879 | Flippin Branch | Fourth And Main Streets | Marion | Flippin | AR | 72634 | Full Service Brick and Mortar Office | 07/23/1973 | 03/07/2000 |

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type | Established Date | Acquired Date |
|--------|--------|------|---------|--------|------|-------|-----|--------------|-----------------|---------------|
| 256975 | 869 | Greers Ferry Branch | 8635 Edgemont Road | Cleburne | Greers Ferry | AR | 72067 | Full Service Brick and Mortar Office | 04/16/1984 | 03/07/2000 |
| 16819 | 868 | Heber Springs Branch | 821 West Main Street | Cleburne | Heber Springs | AR | 72543 | Full Service Brick and Mortar Office | 11/12/1982 | 03/07/2000 |
| 14497 | 885 | Hot Springs Central Avenue Branch | 1234 Central Avenue | Garland | Hot Springs | AR | 71901 | Full Service Brick and Mortar Office | 03/12/1973 | 03/07/2000 |
| 180988 | 894 | Highway 70 West Branch | 1768 Airport Road | Garland | Hot Springs | AR | 71913 | Full Service Brick and Mortar Office | 11/06/1995 | 03/07/2000 |
| 251994 | 886 | Albert Pike Branch | 1801 Albert Pike Road | Garland | Hot Springs | AR | 71913 | Full Service Brick and Mortar Office | 06/01/1985 | 03/07/2000 |
| 251995 | 887 | Hot Springs Mall Branch | 4451 Central Avenue | Garland | Hot Springs | AR | 71913 | Full Service Brick and Mortar Office | 03/01/1992 | 03/07/2000 |
| 251996 | 888 | Malvern Avenue Branch | 1875 Malvern Avenue | Garland | Hot Springs | AR | 71901 | Full Service Brick and Mortar Office | 09/28/1992 | 03/07/2000 |
| 180990 | 895 | Highway 7 North Branch | 101 Cooper Circle | Garland | Hot Springs Village | AR | 71909 | Full Service Brick and Mortar Office | 12/29/1997 | 03/07/2000 |
| 233201 | 864 | Jacksonville Branch | 1804 North First Street | Pulaski | Jacksonville | AR | 72076 | Full Service Brick and Mortar Office | 12/05/1994 | 03/07/2000 |
| 233202 | 867 | Park Plaza Branch | 6320 West Markham Street | Pulaski | Little Rock | AR | 72205 | Full Service Brick and Mortar Office | 12/31/1993 | 03/07/2000 |
| 233203 | 898 | Chenal Branch | 17200 Chenal Parkway | Pulaski | Little Rock | AR | 72223 | Full Service Brick and Mortar Office | 04/02/1999 | 03/07/2000 |
| 233192 | 857 | Capitol Branch | 401 West Capitol Avenue | Pulaski | Little Rock | AR | 72201 | Full Service Brick and Mortar Office | 03/18/1988 | 03/07/2000 |
| 233193 | 858 | Rodney Parham Branch | 10720 Rodney Parham Road | Pulaski | Little Rock | AR | 72212 | Full Service Brick and Mortar Office | 03/28/1988 | 03/07/2000 |
| 233195 | 860 | West Markham Branch | 11402 West Markham | Pulaski | Little Rock | AR | 72211 | Full Service Brick and Mortar Office | 07/09/1990 | 03/07/2000 |
| 233196 | 861 | Heights Branch | 5200 Kavanaugh Boulevard | Pulaski | Little Rock | AR | 72207 | Full Service Brick and Mortar Office | 09/10/1990 | 03/07/2000 |
| 233198 | 862 | Geyer Springs Branch | 6004 Baseline Road | Pulaski | Little Rock | AR | 72209 | Full Service Brick and Mortar Office | 01/15/1992 | 03/07/2000 |

# EXHIBIT

# 4

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C.  20549

# FORM 8-K

## CURRENT REPORT

## PURSUANT TO SECTION 13 OR 15(d) OF THE
## SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported)
October 28, 2005

**AEGIS ASSET BACKED SECURITIES CORPORATION** (as Depositor under the Pooling and Servicing Agreement dated as of October 1, 2005, providing for the issuance of Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5)

Aegis Asset Backed Securities Corporation
(Exact Name of Registrant as Specified in its Charter)

| Delaware | 333-124934 | 43-1964014 |
|---|---|---|
| (State or Other Jurisdiction Of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| 3250 Briarpark, Suite 400, Houston, Texas | 77042 |
|---|---|
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code:  800-991-5625

No Change
(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

[   ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
[   ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
[   ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
[   ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Item 8.01.  Other Events

The Registrant registered issuances of Mortgage Pass-Through Certificates, on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, as amended (the "Act"), by a Registration Statement on Form S-3 (Registration File No. 333-124934) (the "Registration Statement").  Pursuant to the Registration Statement, the Registrant issued $1,165,200,000 in aggregate principal amount of Class IA1, Class IA2, Class IA3, Class IA4, Class IIA, Class M1, Class M2, Class M3, Class M4, Class M5, Class M6, Class B1, Class B2, Class B3, Class B4 and Class B5 of Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5 on October 28, 2005.  This Current Report on Form 8-K is being filed to satisfy an undertaking, contained in the definitive Prospectus dated June 10, 2005, as supplemented by the Prospectus Supplement dated October 14, 2005 (collectively, the "Prospectus"), to file a copy of the Pooling and Servicing Agreement (as defined below) and other operative agreements executed in connection with the issuance of the Certificates, a form of which was filed as an exhibit to the Registration Statement.

The Certificates were issued pursuant to a Pooling and Servicing Agreement (the "Pooling and Servicing Agreement"), attached hereto as Exhibit 4.1, dated as of October 1, 2005, among Aegis Asset Backed Securities Corporation, as depositor, Aegis Mortgage Corporation, as seller, Wells Fargo Bank, N.A., as master servicer, securities administrator and custodian, Ocwen Loan Servicing, LLC, as servicer, MortgageRamp, Inc., as credit risk manager, and Wachovia Bank, National Association, as trustee. The "Certificates" consist of the following classes: Class IA1, Class IA2, Class IA3, Class IA4, Class IIA, Class M1, Class M2, Class M3, Class M4, Class M5, Class M6, Class B1, Class B2, Class B3, Class B4, Class B5, Class B6, Class B7, Class P, Class X and Class R.  The Certificates evidence all of the beneficial ownership interest in a trust fund (the "Trust Fund"), the assets of which consist primarily of (i) two pools of certain first and second lien, fixed and adjustable rate, fully amortizing and balloon, residential mortgage loans (the "Mortgage Loans") with an aggregate outstanding principal balance of approximately $1,155,003,696.34 as of October 1, 2005, (ii) approximately $44,996,305.28 in a pre-funding account and (iii) approximately $200,270.00 in a capitalized interest account together with certain other assets.  Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Pooling and Servicing Agreement.

Item 9.01.  Financial Statements and Exhibits

(a)    Not applicable.

(b)    Not applicable.

(c)    Not applicable.

(d)    Exhibits:

4.1    Pooling and Servicing Agreement dated as of October 1, 2005, among Aegis Asset
       Backed Securities Corporation, as depositor, Aegis Mortgage Corporation, as seller, Wells
       Fargo Bank, N.A., as master servicer, securities administrator and custodian, Ocwen Loan
       Servicing, LLC, as servicer,  MortgageRamp, Inc., as credit risk manager, and Wachovia
       Bank, National Association, as trustee.

99.1   Interim Subservicing Agreement dated as of October 1, 2005, by and between Ocwen
       Loan Servicing, LLC, as servicer, and Aegis Mortgage Corporation, as subservicer.

99.2   (i) Swap Agreement (FXNSC7516) dated as of October 28, 2005 (including ISDA Master
       Agreement, Schedule and trade confirm (by reference)), among Bear Stearns Financial
       Products Inc. and Supplemental Interest Trust, Aegis Asset Backed Securities Trust
       Mortgage Pass-Through Certificates, Series 2005-5; (ii) Swap Agreement (FXNSC7481)
       dated as of October 28, 2005 (including ISDA Master Agreement, Schedule and trade
       confirm (by reference)), among Bear Stearns Financial Products Inc. and Supplemental
       Interest Trust, Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates,
       Series 2005-5; (iii) Swap Agreement (FXNSC7513) dated as of October 28, 2005
       (including ISDA Master Agreement, Schedule and trade confirm (by reference)), among
       Bear Stearns Financial Products Inc. and Supplemental Interest Trust, Aegis Asset Backed
       Securities Trust Mortgage Pass-Through Certificates, Series 2005-5; (iv) Swap Agreement
       (FXNSC7514) dated as of October 28, 2005 (including ISDA Master Agreement,
       Schedule and trade confirm (by reference)), among Bear Stearns Financial Products Inc.
       and Supplemental Interest Trust, Aegis Asset Backed Securities Trust Mortgage Pass-
       Through Certificates, Series 2005-5; and (v) Swap Agreement (FXNSC7515) dated as of
       October 28, 2005 (including ISDA Master Agreement, Schedule and trade confirm (by
       reference)), among Bear Stearns Financial Products Inc. and Supplemental Interest Trust,
       Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5.

**SIGNATURES**

Pursuant to the  requirements of the Securities Exchange Act of 1934, as amended, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

AEGIS ASSET BACKED SECURITIES
CORPORATION

By:  /s/ Pat Walden
           Name:  Pat Walden
           Title:    President

Dated: October 28, 2005

EXHIBIT INDEX

| Exhibit No. | Description |
|---|---|
| 4.1 | Pooling and Servicing Agreement dated as of October 1, 2005, among Aegis Asset Backed Securities Corporation, as depositor, Aegis Mortgage Corporation, as seller, Wells Fargo Bank, N.A. as master servicer, securities administrator and custodian, Ocwen Loan Servicing, LLC, as servicer, MortgageRamp, Inc., as credit risk manager and Wachovia Bank, National Association as trustee. |
| 99.1 | Interim Subservicing Agreement dated as of October 1, 2005, by and between Ocwen Loan Servicing, LLC, as servicer, and Aegis Mortgage Corporation, as subservicer. |
| 99.2 | (i) Swap Agreement (FXNSC7516) dated as of October 28, 2005 (including ISDA Master Agreement, Schedule and trade confirm (by reference)), among Bear Stearns Financial Products Inc. and Supplemental Interest Trust, Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5; (ii) Swap Agreement (FXNSC7481) dated as of October 28, 2005 (including ISDA Master Agreement, Schedule and trade confirm (by reference)), among Bear Stearns Financial Products Inc. and Supplemental Interest Trust, Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5; (iii) Swap Agreement (FXNSC7513) dated as of October 28, 2005 (including ISDA Master Agreement, Schedule and trade confirm (by reference)), among Bear Stearns Financial Products Inc. and Supplemental Interest Trust, Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5; (iv) Swap Agreement (FXNSC7514) dated as of October 28, 2005 (including ISDA Master Agreement, Schedule and trade confirm (by reference)), among Bear Stearns Financial Products Inc. and Supplemental Interest Trust, Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5; and (v) Swap Agreement (FXNSC7515) dated as of October 28, 2005 (including ISDA Master Agreement, Schedule and trade confirm (by reference)), among Bear Stearns Financial Products Inc. and Supplemental Interest Trust, Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5. |

# EXHIBIT

# 5

EX-4 2 exhibit41.htm EXHIBIT 4.1

*EXECUTION*

AEGIS ASSET BACKED SECURITIES CORPORATION,

Depositor

AEGIS MORTGAGE CORPORATION,

Seller

WELLS FARGO BANK, N.A.,

Master Servicer, Securities Administrator and Custodian

OCWEN LOAN SERVICING, LLC,

Servicer

MORTGAGERAMP, INC.,

Credit Risk Manager

and

WACHOVIA BANK, NATIONAL ASSOCIATION,

Trustee

———————————————————

POOLING AND SERVICING AGREEMENT

Dated as of October 1, 2005

———————————————————

AEGIS ASSET BACKED SECURITIES TRUST

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-5

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS                                                                15
Section 1.1      Definitions.                                                        15
Section 1.2      Calculations Respecting Mortgage Loans.                             57
Section 1.3      Calculations Respecting Accrued Interest.                           57
Section 1.4      Rights of the NIMS Insurer.                                         58

ARTICLE II CONVEYANCE OF MORTGAGE LOANS; REPRESENTATIONS AND
          WARRANTIES                                                                58
Section 2.1      Conveyance of Mortgage Loans.                                       58
Section 2.2      Acceptance by Trustee of the Mortgage Loans; Review of
                 Documentation.                                                     64
Section 2.3      Representations, Warranties and Covenants of the Servicer, the
                 Master Servicer, the Seller and the Depositor.                     66
Section 2.4      Delivery of Opinion of Counsel in Connection with Substitutions.   73
Section 2.5      Execution and Delivery of Certificates.                            73

ARTICLE III ADMINISTRATION AND SERVICING OF MORTGAGE LOANS                          74
Section 3.1      Servicer to Service Mortgage Loans.                                74
Section 3.2      Subservicing; Enforcement of the Obligations of the Servicer.      75
Section 3.3      Rights of the Depositor and the Trustee in Respect of the Servicer. 76
Section 3.4      Successor Servicer or Master Servicer to Act as Servicer.          76
Section 3.5      Collection of Mortgage Loan Payments; Custodial Account;
                 Collection Account; Distribution Account.                          78
Section 3.6      Collection of Taxes, Assessments and Similar Items; Escrow
                 Accounts.                                                          81
Section 3.7      Access to Certain Documentation and Information Regarding the
                 Mortgage Loans.                                                    82
Section 3.8      Permitted Withdrawals from the Custodial Account, the Collection
                 Account and the Distribution Account.                             83
Section 3.9      Maintenance of Hazard Insurance; Maintenance of Primary
                 Insurance Policies.                                                85
Section 3.10     Enforcement of Due-on-Sale Clauses; Assumption Agreements.         87
Section 3.11     Realization Upon Defaulted Mortgage Loans; Repurchase of Certain
                 Mortgage Loans.                                                    88
Section 3.12     Securities Administrator to Cooperate; Release of Mortgage Files.  92
Section 3.13     Documents, Records and Funds in Possession of Servicer to be Held
                 for the Trustee.                                                   92
Section 3.14     Servicing Compensation.                                            93
Section 3.15     Access to Certain Documentation.                                   93
Section 3.16     Annual Statement as to Compliance.                                 94
Section 3.17     Annual Independent Public Accountants' Servicing Statement;
                 Financial Statements.                                              94
Section 3.18     Errors and Omissions Insurance; Fidelity Bonds.                    95
Section 3.19     Delinquency Advances.                                              95
Section 3.20     Advance Facility.                                                  96
Section 3.21     Prepayment Penalties.                                              97
Section 3.22     Actions with Respect to Distressed Mortgage Loans.                 98
Section 3.23     Duties of the Credit Risk Manager.                                 98
Section 3.24     Limitation Upon Liability of the Credit Risk Manager.              99

Section 3.25     Removal of Credit Risk Manager.     99

ARTICLE IIIA  ADMINISTRATION AND MASTER SERVICING OF MORTGAGE
        LOANS     99
Section 3A.1     Master Servicer.     99
Section 3A.2     REMIC-Related Covenants.     100
Section 3A.3     Monitoring of Servicer.     101
Section 3A.4     Fidelity Bond.     102
Section 3A.5     Power to Act; Procedures.     102
Section 3A.6     Documents, Records and Funds in Possession of Master Servicer To
        Be Held for Trustee.     103
Section 3A.7     Trustee to Retain Possession of Certain Insurance Policies and
        Documents.     103
Section 3A.8     Compensation for the Master Servicer.     104
Section 3A.9     Annual Officer's Certificate as to Compliance.     104
Section 3A.10    UCC.     104
Section 3A.11    Obligation of the Master Servicer in Respect of Prepayment Interest
        Shortfalls.     104

ARTICLE IV DISTRIBUTIONS     105
Section 4.1     Distributions.     105
Section 4.2     Method of Distribution.     123
Section 4.3     Allocation of Losses.     124
Section 4.4     Reports to the Depositor, the Securities Administrator and the
        Trustee.     125
Section 4.5     Reports by or on Behalf of the Trustee.     125
Section 4.6     Basis Risk Reserve Fund.     128
Section 4.7     Supplemental Interest Trust.     129
Section 4.8     Rights of Swap Counterparty.     130
Section 4.9     The Pre-Funding Account.     130
Section 4.10     The Capitalized Interest Account.     131

ARTICLE V THE CERTIFICATES     132
Section 5.1     The Certificates.     132
Section 5.2     Certificate Register; Registration of Transfer and Exchange of
        Certificates.     132
Section 5.3     Mutilated, Destroyed, Lost or Stolen Certificates.     138
Section 5.4     Persons Deemed Owners.     138
Section 5.5     Access to List of Certificateholders' Names and Addresses.     138
Section 5.6     Maintenance of Office or Agency.     138

ARTICLE VI THE DEPOSITOR, THE SERVICER, THE MASTER SERVICER, THE
        SELLER AND THE CREDIT RISK MANAGER     139
Section 6.1     Respective Liabilities of the Depositor, the Servicer, the Master
        Servicer, the Seller and the Credit Risk Manager.     139
Section 6.2     Merger or Consolidation of the Depositor, Servicer, the Master
        Servicer, the Seller and the Credit Risk Manager.     139
Section 6.3     Limitation on Liability of the Depositor, the Master Servicer, the
        Servicer, the Seller and Others.     140
Section 6.4     Limitation on Resignation of Servicer.     141
Section 6.5     Reporting Requirements of the Commission and Indemnification.     141

ARTICLE VII DEFAULT     141
Section 7.1     Events of Default.     141
Section 7.2     Notification to Certificateholders.     146

ARTICLE VIII CONCERNING THE TRUSTEE AND THE SECURITIES

| | ADMINISTRATOR; REPORTS | 146 |
|---|---|---|
| Section 8.1 | Duties of Trustee and the Securities Administrator. | 146 |
| Section 8.2 | Certain Matters Affecting the Trustee and the Securities Administrator. | 148 |
| Section 8.3 | Neither Trustee nor Securities Administrator Liable for Certificates or Mortgage Loans. | 150 |
| Section 8.4 | Trustee and Securities Administrator May Own Certificates. | 150 |
| Section 8.5 | Fees and Expenses of the Trustee, the Securities Administrator and Others. | 150 |
| Section 8.6 | Eligibility Requirements for the Trustee and the Securities Administrator. | 151 |
| Section 8.7 | Resignation and Removal of Trustee or Securities Administrator. | 151 |
| Section 8.8 | Successor Trustee or Securities Administrator. | 152 |
| Section 8.9 | Merger or Consolidation of Trustee or Securities Administrator. | 153 |
| Section 8.10 | Appointment of Co-Trustee or Separate Trustee. | 153 |
| Section 8.11 | Tax Matters. | 154 |
| Section 8.12 | Filings. | 157 |
| Section 8.13 | Reporting Requirements of the Commission and Indemnification | 158 |
| Section 8.14 | The Custodian and the Securities Administrator. | 158 |
| ARTICLE IX TERMINATION | | 159 |
| Section 9.1 | Termination upon Liquidation or Purchase of all Mortgage Loans. | 159 |
| Section 9.2 | Final Distribution on the Certificates. | 160 |
| Section 9.3 | Additional Termination Requirements. | 161 |
| ARTICLE X MISCELLANEOUS PROVISIONS | | 162 |
| Section 10.1 | Amendment. | 162 |
| Section 10.2 | Recordation of Agreement; Counterparts. | 164 |
| Section 10.3 | Governing Law. | 164 |
| Section 10.4 | Intention of Parties. | 165 |
| Section 10.5 | Notices. | 165 |
| Section 10.6 | Severability of Provisions. | 166 |
| Section 10.7 | Assignment. | 166 |
| Section 10.8 | Limitation on Rights of Certificateholders. | 167 |
| Section 10.9 | Inspection and Audit Rights. | 168 |
| Section 10.10 | Certificates Nonassessable and Fully Paid. | 168 |
| Section 10.11 | Limitations on Actions; No Proceedings. | 168 |
| Section 10.12 | Mortgage Data. | 169 |
| Section 10.13 | Benefits of Agreement; Additional Rights of NIMS Insurer. | 169 |
| Section 10.14 | Waiver of Jury Trial. | 170 |
| Section 10.15 | Limitation of Damages. | 170 |

## SCHEDULES

Schedule I:      Mortgage Loan Schedule

## EXHIBITS

| | |
|---|---|
| Exhibit A: | Forms of Certificates |
| Exhibit B: | [Reserved] |
| Exhibit C: | Form of Initial Certification of Custodian |
| Exhibit D: | Form of Final Certification of Custodian |
| Exhibit E-1: | Form of Residual Transfer Affidavit (Transferor) |
| Exhibit E-2 | Form of Residual Transfer Affidavit (Transferee) |
| Exhibit F: | Form of Transferor Certificate |
| Exhibit G-1: | Form of Investment Letter (Non-Rule 144A) |
| Exhibit G-2: | Form of Investment Letter (Rule 144A) |
| Exhibit H: | Benefit Plan Affidavit |
| Exhibit I: | [Reserved] |
| Exhibit J: | Request for Release of Documents |
| Exhibit K: | Form of Certification to be Provided to the Depositor by the Servicer |
| Exhibit L: | Form of Certification to be Provided to the Depositor by the Trustee |
| Exhibit M: | Form of Limited Power of Attorney |
| Exhibit N: | Credit Risk Management Agreements |
| Exhibit O: | Swap Agreement |
| Exhibit P: | Form of Addition Notice |

This POOLING AND SERVICING AGREEMENT dated as of October 1, 2005 (this "Agreement"), is by and among AEGIS ASSET BACKED SECURITIES CORPORATION, a Delaware corporation, as depositor (the "Depositor"), AEGIS MORTGAGE CORPORATION, a Delaware corporation, as seller (the "Seller"), WELLS FARGO BANK, N.A., as master servicer (in such capacity, the "Master Servicer"), securities administrator (in such capacity, the "Securities Administrator") and custodian (in such capacity, the "Custodian"), OCWEN LOAN SERVICING, LLC, as servicer (together with any successor in interest, the "Servicer"), MORTGAGERAMP, INC., as credit risk manager (the "Credit Risk Manager"), and WACHOVIA BANK, NATIONAL ASSOCIATION, as trustee (the "Trustee").

WITNESSETH THAT

In consideration of the mutual agreements herein contained, the parties hereto agree as follows:

PRELIMINARY STATEMENT

The Depositor has acquired the Mortgage Loans from the Seller, and at the Closing Date is the owner of the Mortgage Loans and the other property being conveyed by it to the Trustee hereunder for inclusion in the Trust Fund.  On the Closing Date, the Depositor will acquire the Certificates from the Trust Fund, as consideration for its transfer to the Trust Fund of the Mortgage Loans and the other property constituting the Trust Fund.  The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Mortgage Loans and the other property constituting the Trust Fund.  All covenants and agreements made by the Seller in the Sale Agreement and by the Depositor, the Seller, the Servicer, the Credit Risk Manager and the Trustee herein with respect to the Mortgage Loans and the other property constituting the Trust Fund are for the benefit of the Holders from time to time of the Certificates and, to the extent provided herein, the NIMS Insurer, if any.  The Depositor, the Seller, the Master Servicer, the Securities Administrator, the Custodian, the Servicer, the Trustee, and the Credit Risk Manager are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

As provided herein, an election shall be made that the Trust Fund (exclusive of (i) the Swap Agreement, (ii) the right to receive and the obligation to pay Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls, (iii) the Basis Risk Reserve Fund, (iv) the Supplemental Interest Trust (v) the Supplemental Interest Trust Account, (vi) the Pre-Funding Account, (vii) the Capitalized Interest Account and (viii) the obligation to pay Class I Shortfalls (collectively, the "Excluded Trust Assets")) be treated for federal income tax purposes as comprising three real estate mortgage investment conduits under Section 860D of the Code (each a "REMIC" or, in the alternative "REMIC 1," "REMIC 2," and "REMIC 3," also being referred to as the "Upper Tier REMIC").  Any inconsistencies or ambiguities in this Agreement or in the administration of this Agreement shall be resolved in a manner that preserves the validity of such REMIC elections.

Each Certificate, other than the Class R Certificate, represents ownership of a regular interest in the Upper Tier REMIC for purposes of the REMIC Provisions.  In addition, each Certificate, other than the Class R, Class X and Class P Certificates, represents (i) the right to receive payments with respect to any Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls and (ii) the obligation to pay Class I Shortfalls.  The Class R Certificate represents ownership of the sole Class of residual interest in each of REMIC 1, REMIC 2 and the Upper Tier REMIC for purposes of the REMIC Provisions.

The Upper Tier REMIC shall hold as its assets the uncertificated Lower Tier Interests in REMIC 2, other than the LT2-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 2 for purposes of the REMIC Provisions.  REMIC 2 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 1, other than the LT1-R interest, and each such Lower Tier Interest is hereby designated as a regular

Funds Cap shall be treated as having been paid by the Class B5 Certificateholders to the Supplemental Interest Trust, all pursuant to and as further provided in Section 8.11(c) hereof.

(17)     The Certificate Interest Rate with respect to any Distribution Date (and the related Accrual Period) for the Class B6 Certificates is the per annum rate equal to the lesser of (i) LIBOR plus 2.500% and (ii) the Subordinate Net Funds Cap for such Distribution Date; *provided* that if the Mortgage Loans and related property are not purchased pursuant to Section 8.1(a) on the Initial Optional Purchase Date, then with respect to each subsequent Distribution Date the per annum rate calculated pursuant to clause (i) above with respect to the Class B6 Certificates will be LIBOR plus 3.750%. For purposes of the REMIC Provisions, the reference to "Subordinate Net Funds Cap" in clause (ii) of the preceding sentence shall be deemed to be a reference to the REMIC 2 Net Funds Cap; therefore: on any Distribution Date the Certificate Interest Rate for the Class B6 Certificates exceeds the REMIC 2 Net Funds Cap, interest accruals based on such excess shall be treated as having been paid from the Basis Risk Reserve Fund or the Supplemental Interest Trust, as applicable; on any Distribution Date on which the Certificate Interest Rate on the Class B6 Certificates is based on the Subordinate Net Funds Cap, the amount of interest that would have accrued on the Class B6 Certificates if the REMIC 2 Net Funds Cap were substituted for the Subordinate Net Funds Cap shall be treated as having been paid by the Class B6 Certificateholders to the Supplemental Interest Trust, all pursuant to and as further provided in Section 8.11(c) hereof.

(18)     The Certificate Interest Rate with respect to any Distribution Date (and the related Accrual Period) for the Class B7 Certificates is the per annum rate equal to the lesser of (i) LIBOR plus 2.500% and (ii) the Subordinate Net Funds Cap for such Distribution Date; *provided* that if the Mortgage Loans and related property are not purchased pursuant to Section 8.1(a) on the Initial Optional Purchase Date, then with respect to each subsequent Distribution Date the per annum rate calculated pursuant to clause (i) above with respect to the Class B7 Certificates will be LIBOR plus 3.750%. For purposes of the REMIC Provisions, the reference to "Subordinate Net Funds Cap" in clause (ii) of the preceding sentence shall be deemed to be a reference to the REMIC 2 Net Funds Cap; therefore: on any Distribution Date the Certificate Interest Rate for the Class B7 Certificates exceeds the REMIC 2 Net Funds Cap, interest accruals based on such excess shall be treated as having been paid from the Basis Risk Reserve Fund or the Supplemental Interest Trust, as applicable; on any Distribution Date on which the Certificate Interest Rate on the Class B7 Certificates is based on the Subordinate Net Funds Cap, the amount of interest that would have accrued on the Class B7 Certificates if the REMIC 2 Net Funds Cap were substituted for the Subordinate Net Funds Cap shall be treated as having been paid by the Class B7 Certificateholders to the Supplemental Interest Trust, all pursuant to and as further provided in Section 8.11(c) hereof.

(19)     The Class P Certificates will not bear interest at a stated rate but shall entitle the Holder thereof to receive Prepayment Penalties paid with respect to the Mortgage Loans as provided in Section 4.1(g).

(20)     The Class P and the Class X Certificates shall each be issued in minimum Percentage Interests of 100%.

(21)     For purposes of the REMIC Provisions, Class X shall have an initial principal balance of $6,599,901.62 and the right to receive distributions of such amount represents a regular interest in the Upper Tier REMIC. The Class X Certificate shall also comprise two notional components, each of which represents a regular interest in the Upper Tier REMIC. The first such component has a notional balance that will at all times equal the aggregate of the Class Principal Amounts of the Lower Tier Interests in REMIC 2, and, for each Distribution Date (and the related Accrual Period) this notional component shall bear interest at a per annum rate equal to the excess, if any, of (i) the difference between (a) the weighted average of the interest rates on the Lower Tier Interests in REMIC 2 (other than the Class LT2-IO Interest) minus (b) the Credit Risk Manager's Fee Rate, over (ii) the Adjusted Lower Tier WAC. The second notional component represents the right to receive all distributions in respect of the Class LT2-IO Interest in REMIC 2. In addition, for purposes of the REMIC Provisions, the Class X Certificates shall represent beneficial ownership of (i) the Basis Risk Reserve Fund; (ii) the Supplemental Interest Trust, including the Swap Agreement; and (iii) an interest in the notional principal contracts provided in Section 8.11(c) hereof.

(22)     The Class R Certificates will be issued without a Certificate Principal Amount and will not bear interest at a stated rate. The Class R Certificates represent ownership of the residual interest in the Upper Tier REMIC, as well as ownership of the Class LT1-R and Class LT2-R Lower Tier Interests.

As of the Initial Cut-off Date, the Initial Mortgage Loans had an aggregate Scheduled Principal Balance of $1,155,003,696.34.

## ARTICLE I

## DEFINITIONS

Section 1.1     Definitions.  The following words and phrases, unless the context otherwise requires, shall have the following meanings:

percentage, of (1) the amount of any Net Swap Payment owed by the Swap Counterparty for such Distribution Date allocable to Pool 1 (based on the applicable Pool Percentage) divided by the Pool Balance for Pool 1 as of the beginning of the related Collection Period and (2) a fraction, the numerator of which is 360 and the denominator of which is the actual number of days in the Accrual Period related to such Distribution Date; *minus* (c) the product, expressed as a percentage, of (1) the amount of any Net Swap Payment owed to the Swap Counterparty for such Distribution Date allocable to Pool 1 (based on the applicable Pool Percentage) divided by the Pool Balance for Pool 1 as of the beginning of the related Collection Period and (2) a fraction, the numerator of which is 360 and the denominator of which is the actual number of days in the Accrual Period related to such Distribution Date; (ii) in the case of the Class IIA Certificates, an annual rate equal to (a) the product, expressed as a percentage, of (1) the amount, if any, by which the weighted average of the maximum lifetime Mortgage Rates, as specified in the related Mortgage Notes for the Pool 2 Mortgage Loans, exceeds the Servicing Fee Rate and (2) a fraction, the numerator of which is 30 and the denominator of which is the actual number of days in the Accrual Period related to such Distribution Date; *plus* (b) the product, expressed as a percentage, of (1) the amount of any Net Swap Payment owed by the Swap Counterparty for such Distribution Date allocable to Pool 2 (based on the applicable Pool Percentage) divided by the Pool Balance for Pool 2 as of the beginning of the related Collection Period and (2) a fraction, the numerator of which is 360 and the denominator of which is the actual number of days in the Accrual Period related to such Distribution Date; *minus* (c) the product, expressed as a percentage, of (1) the amount of any Net Swap Payment owed to the Swap Counterparty for such Distribution Date allocable to Pool 2 (based on the applicable Pool Percentage) divided by the Pool Balance for Pool 2 as of the beginning of the related Collection Period and (2) a fraction, the numerator of which is 360 and the denominator of which is the actual number of days in the Accrual Period related to such Distribution Date; and (iii) in the case of the Class M1, Class M2, Class M3, Class M4, Class M4, Class M5, Class M6, Class B1, Class B2, Class B3, Class B4, Class B5, Class B6 and Class B7 Certificates, an annual rate equal to the weighted average of (a) the Maximum Interest Rate for the Class IA1, Class IA2, Class IA3 and Class IA4 Certificates, weighted on the basis of the Pool Subordinate Amount for Pool 1, and (b) the Maximum Interest Rate for the Class IIA Certificates, weighted on the basis of the Pool Subordinate Amount for Pool 2.

MERS:  Mortgage Electronic Registration Systems, Inc., a Delaware corporation, or any successor in interest thereto.

MERS Mortgage Loan:  Any Mortgage Loan as to which the related Mortgage, or an Assignment of Mortgage, has been or will be recorded in the name of MERS, as nominee for the holder from time to time of the Mortgage Note.

Monthly Excess Cashflow:  With respect to any Distribution Date, the sum, of (i) the Pool 1 Monthly Excess Interest and the Pool 2 Monthly Excess Interest for such date, (ii) the Aggregate Overcollateralization Release Amount for such date and (iii) any remaining Principal Distribution Amount from either Mortgage Pool after making the distributions in Section 4.1(d) for such date.

Moody's:  Moody's Investors Service, Inc., or any successor in interest.

Mortgage:  A mortgage, deed of trust or other instrument encumbering a fee simple interest in real property securing a Mortgage Note, together with improvements thereto.

Mortgage File:  The mortgage documents listed in Section 2.1(b) pertaining to a particular Mortgage Loan required to be delivered to the Custodian on behalf of the Trustee pursuant to this Agreement.

Mortgage Loan:  A Mortgage and the related notes or other evidences of indebtedness secured by each such Mortgage conveyed, transferred, sold, assigned to or deposited with the Trustee pursuant to Section 2.1 or Section 2.3, including without limitation each Initial Mortgage Loan and Subsequent Mortgage Loan listed on the Mortgage Loan Schedule, as amended from time to time.

Mortgage Loan Document Requirements:  As defined in Section 2.2 hereof.

Mortgage Loan Documents:  As defined in Section 2.1 hereof.

Mortgage Loan Schedule:  The schedule attached hereto as Schedule I, which shall identify each Mortgage Loan, as such schedule may be amended from time to time to reflect the addition of Mortgage Loans to (including the addition of any Subsequent Mortgage Loans), or the deletion of Mortgage Loans from, the Trust Fund.  The Depositor shall be responsible for providing the Master Servicer and the Custodian on behalf of the Trustee with all amendments to the Mortgage Loan Schedule, including in connection with the addition of Subsequent Mortgage Loans on a Transfer Date.

Mortgage Note:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage under a Mortgage Loan.

Mortgage Pool:  Either of Pool 1 or Pool 2.

Mortgage Rate:  With respect to any Mortgage Loan, the per annum rate at which interest accrues on such Mortgage Loan, as determined under the related Mortgage Note as reduced by any application of the Relief Act.

Mortgaged Property:  The fee simple (or leasehold) interest in real property, together with improvements thereto including any exterior improvements to be completed within 120 days of disbursement of the related Mortgage Loan proceeds.

Mortgagor:  The obligor on a Mortgage Note.

Net Excess Spread:  With respect to any Distribution Date, (A) the fraction, expressed as a percentage, the numerator of which is equal to the product of (i) the amount, if any, by which (a) the aggregate of the Interest Remittance Amounts for each Mortgage Pool for such Distribution Date (as reduced by the sum of the Credit Risk Manager's Fee) exceeds (b) the Current Interest payable with respect to the Certificates for such date and (ii) twelve, and the denominator of which is the Aggregate Pool Balance for such Distribution Date, multiplied by (B) a fraction, the numerator of which is thirty and the denominator of which is the greater of thirty and the actual number of days in the immediately preceding calendar month.

Net Funds Cap:  The Pool 1 Net Funds Cap, the Pool 2 Net Funds Cap or the Subordinate Net Funds Cap, as the context requires.

Net Liquidation Proceeds:  With respect to any Liquidated Mortgage Loan, the related Liquidation Proceeds net of (i) unreimbursed expenses, (ii) unreimbursed Advances, if any, and (iii) in the case of a liquidated Junior Lien Mortgage Loan, the amount necessary to repay the related senior lien mortgage loan, received and retained in connection with the liquidation of defaulted Mortgage Loans, through insurance or condemnation proceeds, by foreclosure or otherwise, together with any net proceeds received on a monthly basis with respect to any Mortgaged Properties acquired by foreclosure or deed in lieu of foreclosure.

Net Mortgage Rate:  With respect to any Mortgage Loan, the Mortgage Rate thereof reduced by the Servicing Fee Rate for such Mortgage Loan.

Net Prepayment Interest Shortfall:  With respect to any Distribution Date, the excess, if any, of any Prepayment Interest Shortfalls for such date over Compensating Interest, if any, paid by the Servicer with respect to such Distribution Date.

Net Swap Payment:  With respect to each Distribution Date, the net payment required to be made pursuant to the terms of the Swap Agreement, as calculated by the Swap Counterparty, which net payment shall not take into account any Swap Termination Payment.

Net WAC Rate:  With respect to any Distribution Date (and the related Accrual Period), a per annum rate equal to the weighted average of the Net Mortgage Rates of the Mortgage Loans as of the first day of the related Collection Period (not including for this purpose Mortgage Loans for which prepayments in full have been received and distributed in the month prior to that Distribution Date).

NIMS Agreement:  Any agreement pursuant to which NIM Securities, if any, are issued.

NIMS Insurer:  Not applicable.

NIM Securities:  Any net interest margin securities issued subsequent to the Closing Date by a trust or other special purpose entity, the principal assets of such trust including the Class P and Class X Certificates and the payments received thereon, which principal assets back such securities.

Non-Book-Entry Certificate:  Any Certificate other than a Book-Entry Certificate.

Non-MERS Mortgage Loan:  Any Mortgage Loan other than a MERS Mortgage Loan.

Nonrecoverable Advance:  Any portion of any Advance previously made or proposed to be made by or on behalf of the Servicer that, in the good faith judgment of the Servicer, will not be ultimately recoverable from the related Mortgagor, related Liquidation Proceeds or otherwise from amounts in respect of the related Mortgage Loan.

Notice Address:  For purposes hereof, the addresses of the Depositor, the Seller, the Master Servicer, the Securities Administrator, the Custodian, the Servicer, the Trustee, the Credit Risk Manager, the NIMS Insurer, if any, each Rating Agency and the Swap Counterparty are as follows:

(i)     If to the Depositor:

Aegis Asset Backed Securities Corporation
3250 Briarpark, Suite 400
Houston, Texas  77042
Attention: Secondary Marketing

(ii)    If to the Seller:

Aegis Mortgage Corporation
3250 Briarpark, Suite 400
Houston, Texas  77042
Attention:  Secondary Marketing

(iii)   If to the Master Servicer:

Wells Fargo Bank, N.A.
P.O. Box 98
Columbia, Maryland  21046
Attention:  Corporate Trust Services (AEGIS 2005-5)

or for overnight delivery to:

9062 Old Annapolis Rd.
Columbia, Maryland  21045-1951
Attention:  Corporate Trust Services (AEGIS 2005-5)

(iv)    If to the Securities Administrator, to its Corporate Trust Office.

(v)     If to the Custodian:

Wells Fargo Bank N.A.
1015 10th Avenue, SE
Minneapolis, Minnesota  55414
Attention:  AEGIS 2005-5

(vi)    If to the Servicer:

       Ocwen Loan Servicing, LLC
       1661 Worthington Road
       Centre Park West, Suite 100
       West Palm Beach, Florida  33409
       Attention:  Secretary

       With a copy to:

       Aegis Mortgage Corporation
       3250 Briarpark, Suite 400
       Houston, Texas  77042
       Attention:  Secondary Marketing

(vii)    If to the Trustee, to its Corporate Trust Office.

(viii)    If to the Credit Risk Manager:

       MortgageRamp, Inc.
       7000 Central Parkway, Suite 800
       Atlanta, Georgia 30328
       Attention:  Chief Executive Officer

       With a copy to:
       Legal Department
       200 Wittmer Road
       Horsham, Pennsylvania 19044
       Attention:  General Counsel

(ix)    If to the NIMS Insurer:  Not applicable.

(x)    If to Moody's:

       Moody's Investors Service, Inc.
       99 Church Street, 4th Floor
       New York, New York  10007
       Attention:  Residential Mortgages

(xi)    If to S&P:

       Standard & Poor's Ratings Services,
        a division of The McGraw-Hill Companies, Inc.
       55 Water Street, 41st Floor
       New York, New York  10041
       Attention:  RMBS Surveillance

(xii)    If to Fitch:

       Fitch, Inc.
       One State Street Plaza
       30th Floor
       New York, New York  10004
       Attention:  Residential Mortgages

(xiii)    If to the Swap Counterparty:

off Date or Subsequent Cut-off Date, as applicable, and on or before the Due Date in the related Collection Period, whether or not received from the Mortgagor or advanced by or on behalf of the Servicer, and all amounts allocable to unscheduled principal payments (including Principal Prepayments, Liquidation Proceeds, Insurance Proceeds and condemnation proceeds, in each case to the extent identified and applied prior to or during the related Prepayment Period) and (ii) any REO Property as of any Distribution Date, the Scheduled Principal Balance of the related Mortgage Loan on the Due Date immediately preceding the date of acquisition of such REO Property by or on behalf of the Trustee (reduced by any amount applied as a reduction of principal on the Mortgage Loan). With respect to any Mortgage Loan as of the Initial Cut-off Date or Subsequent Cut-off Date, as applicable, as specified in the Mortgage Loan Schedule.

Securities Act:  The Securities Act of 1933, as amended.

Securities Administrator:  As of the Closing Date, Wells Fargo Bank, N.A. and thereafter, any successor in interest or assign that meets the requirements of this Agreement.  So long as Wells Fargo Bank, N.A. shall be the Securities Administrator, if Wells Fargo Bank, N.A. shall resign or be terminated as Securities Administrator under this Agreement, Wells Fargo Bank, N.A. shall simultaneously resign or be terminated as Master Servicer.

Seller:  Aegis Mortgage Corporation or any successor in interest.

Senior Certificate:  Any Class A Certificate.

Senior Enhancement Percentage:  With respect to any Distribution Date, the fraction, expressed as a percentage, the numerator of which is the sum of the aggregate Class Principal Amount of the Class M and Class B Certificates and the Overcollateralization Amount (which amount, for purposes of this definition only, shall not be less than zero) and the denominator of which is the Aggregate Pool Balance for such Distribution Date, in each case after giving effect to distributions or such Distribution Date.

Senior Principal Distribution Amount:  With respect to any Distribution Date (a) prior to the Stepdown Date or if a Trigger Event is in effect with respect to such Distribution Date, an amount equal to 100% of the Principal Distribution Amount for both Mortgage Pools and (b) on or after the Stepdown Date and as long as a Trigger Event is not in effect with respect to such Distribution Date, the lesser of (x) the Principal Distribution Amount for both Mortgage Pools and (y) the amount, if any, by which (x) the aggregate Class Principal Amount of the Class IA1, Class IA2, Class IA3, Class IA4 and Class IIA Certificates immediately prior to such Distribution Date exceeds (y) the Senior Target Amount.

Senior Priority:  With respect to Pool 1, to the Class IA1, Class IA2, Class IA3, and Class IA4, sequentially, in that order, in reduction of their Class Principal Amounts, until the Class Principal Amount of each such Class has been reduced to zero.

Senior Proportionate Percentage:  With respect to Pool 1 and any Distribution Date, the fraction, expressed as a percentage, the numerator of which is the Principal Remittance Amount for Pool 1 for such Distribution Date and the denominator of which is the aggregate of the Principal Remittance Amounts for Pool 1 and Pool 2 for such Distribution Date.  With respect to Pool 2 and any Distribution Date, the fraction, expressed as a percentage, the numerator of which is the Principal Remittance Amount for Pool 2 for such Distribution Date and the denominator of which is the aggregate of the Principal Remittance Amounts for Pool 1 and Pool 2 for such Distribution Date.

Senior Target Amount:  With respect to each Distribution Date, an amount equal to the lesser of (a) the product of (i) 52.90% and (ii) the Aggregate Pool Balance for such Distribution Date and (b) the amount, if any, by which (i) the Aggregate Pool Balance for such Distribution Date exceeds (ii) 0.50% of the Cut-off Date Balance.

Servicer:  Ocwen Loan Servicing, LLC or any successor in interest, or if any successor servicer shall be appointed as herein provided, then such successor servicer.

<u>Transferee Affidavit</u>:  As defined in Section 5.2.

<u>Transferor Affidavit</u>:  As defined in Section 5.2.

<u>Trigger Event</u>:  A Trigger Event shall have occurred with respect to any Distribution Date if (i) a Delinquency Event or (ii) an Overcollateralization Cumulative Loss Trigger Event shall have occurred.

<u>Trust Fund</u>:  The corpus of a trust created pursuant to this Agreement and designated as the "Trust Fund," consisting of the Mortgage Loans, the assignment of the Depositor's rights under the Sale Agreement, such amounts as shall from time to time be held in the Collection Account, the Distribution Account and any Escrow Account, the Basis Risk Reserve Fund, the Pre-Funding Account, the Capitalized Interest Account, any Insurance Policies, any REO Property and the other items referred to in, and conveyed to the Trustee under, Section 2.1(a).

<u>Trustee</u>:  Wachovia Bank, National Association, not in its individual capacity but solely as Trustee, or any successor in interest, or if any successor trustee or any co-trustee shall be appointed as herein provided, then such successor trustee and such co-trustee, as the case may be.

<u>Trustee Fee</u>:  The annual fee payable by the Master Servicer on behalf of the Trust Fund to the Trustee from income on funds held in the Collection Account as provided in Section 3.8 and pursuant to the terms of Section II of the separate fee letter agreement for Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2005-5, a copy of which has been provided to the Master Servicer and the Securities Administrator.

<u>Trustee Fee Rate</u>:  Not applicable..

<u>UCC</u>:  The Uniform Commercial Code as in effect in any applicable jurisdiction from time to time.

<u>Underwriters</u>:  Bear, Stearns & Co. Inc., Credit Suisse First Boston LLC, Lehman Brothers Inc. and UBS Securities LLC.

<u>Underwriter's Exemption</u>:  Prohibited Transaction Exemption 2002-41, 67 Fed. Reg. 54487 (2002), as amended (or any successor thereto), or any substantially similar administrative exemption granted by the U.S. Department of Labor.

<u>Unpaid Basis Risk Shortfall</u>:  With respect to any Distribution Date and any LIBOR Certificate, the aggregate of all Basis Risk Shortfalls with respect to such Certificate remaining unpaid from previous Distribution Dates, plus interest accrued thereon at the applicable Certificate Interest Rate (calculated without giving effect to the applicable Net Funds Cap but limited to a rate no greater than the Maximum Interest Rate).

<u>Upper Tier REMIC</u>:  REMIC 3.

<u>Voting Interests</u>:  The portion of the voting rights of all the Certificates that is allocated to any Certificate for purposes of the voting provisions of this Agreement.  At all times during the term of this Agreement, 98% of all Voting Interests shall be allocated to the Class A, Class M and Class B Certificates.  Voting Interests shall be allocated among such Certificates based on the product of (i) 98% and (ii) the fraction, expressed as a percentage, the numerator of which is the aggregate Class Principal Amount of all Certificates then outstanding and the denominator of which is the Pool Balance then outstanding.  The remainder of the Voting Interests not otherwise allocated below shall be allocated to the Class R Certificates.  At all times during the term of this Agreement, 1% of all Voting Interests shall be allocated to each Class of the Class P and Class X Certificates, while they remain outstanding.  Voting Interests shall be allocated among the other Classes of Certificates (and among the Certificates within each such Class) in proportion to their Class Principal Amounts (or Certificate Principal Amounts) or Percentage Interests.

Section 1.2    <u>Calculations Respecting Mortgage Loans</u>.

Calculations required to be made pursuant to this Agreement with respect to any Mortgage Loan in the Trust Fund shall be made based upon current information as to the terms of the Mortgage Loans and reports of payments received from the Mortgagor on such Mortgage Loans and payments to be made to the Master Servicer and then to the Securities Administrator as supplied to the Master Servicer by the Servicer and to the Securities Administrator by the Master Servicer.  The Securities Administrator shall not be required to recompute, verify or recalculate the information supplied to it by the Master Servicer or the Credit Risk Manager.

Section 1.3    <u>Calculations Respecting Accrued Interest</u>.

Accrued interest, if any, on any LIBOR Certificate shall be calculated based upon a 360-day year and the actual number of days in each Accrual Period.  Accrued interest, if any, on the Class X Certificates and each class of Lower Tier Interests shall be calculated based upon a 360-day year consisting of twelve 30-day months.

Section 1.4    <u>Rights of the NIMS Insurer</u>.

Each of the rights of the NIMS Insurer, if any, set forth in this Agreement shall be in effect only so long as any NIM Securities are issued and remain outstanding or the NIMS Insurer, if any, is owed amounts in respect of its guarantee of payment on such NIM Securities.

ARTICLE II
CONVEYANCE OF MORTGAGE LOANS; REPRESENTATIONS AND WARRANTIES

Section 2.1    <u>Conveyance of Mortgage Loans</u>.

(a)    <u>Initial Mortgage Loans.</u>  To provide for the distribution of the principal of and interest on the Certificates in accordance with their terms, the distribution of all other sums distributable hereunder with respect to the Certificates and the performance of the covenants contained herein, the Depositor hereby sells, conveys, assigns and transfers to the Trustee, in trust, without recourse, subject to Section 2.3, in trust, and for the exclusive benefit of the Certificateholders as their respective interests may appear, all the Depositor's right, title and interest in and to any and all benefits accruing to the Depositor from:  (A) (i) the Initial Mortgage Loans (and all Qualified Substitute Mortgage Loans substituted therefor) exclusive of the servicing rights related thereto, in respect of which the Depositor is causing to be delivered to the Trustee (or the Custodian) herewith the related Mortgage Files, and the Depositor's interest in any collateral pledged to secure a Mortgage Loan, and all Scheduled Payments due after the Initial Cut-off Date and all Principal Prepayments received with respect to the Mortgage Loans paid by the borrower after the Initial Cut-off Date and proceeds of the conversion, voluntary or involuntary, of the foregoing; (ii) each Insurance Policy; (iii) the Sale Agreement (and delegates its obligations thereunder) and (iv) all proceeds of any of the foregoing (including, but not limited to, all proceeds of any mortgage insurance, hazard insurance, or title insurance policy relating to the Mortgage Loans, cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables, which at any time constitute all or part or are included in the proceeds of any of the foregoing); to pay the Certificates as specified herein (items (i) through (iv) above, collectively, the "Trust Fund") and (B) the Swap Agreement and the right to receive cash and all other assets constituting property of the Supplemental Interest Trust.

Concurrently with the execution of this Agreement, the Swap Agreement shall be delivered to the Securities Administrator on behalf of the Trustee.  In connection therewith, the Depositor hereby directs the Trustee (solely in its capacity as such) to execute and deliver the Swap Agreement on behalf of, and for the benefit of, the Certificateholders. The Seller, the Master Servicer, the Securities Administrator, the Depositor, the Servicer and the Certificateholders (by their acceptance of such Certificates) acknowledge and agree that the Trustee is executing and delivering the Swap Agreement solely in its capacity as Trustee of the Trust Fund and not in its individual capacity.

It is agreed and understood by the Depositor and the Trustee (and the Seller has so represented and recognized in the Sale Agreement) that it is not intended that any Mortgage Loan to be included in the Trust

Fund be (i) a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004, (iii) a "High-Risk Home Loan" as defined in the Illinois High-Risk Home Loan Act effective January 1, 2004, (iv) a "High-Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004, or (v) a "High Cost Home Loan" as defined in the Indiana Home Loan Practices Act effective January 1, 2005.

(b)  Subsequent Mortgage Loans.  On each Transfer Date, provided that each condition set forth in this Section 2.1(b) is satisfied, the Depositor shall convey to the Trustee, and the Trustee shall purchase pursuant to this Section 2.1(b), all Subsequent Mortgage Loans that satisfy the criteria set forth in this Section 2.1(b) then offered for sale by the Depositor; *provided, however*, that the aggregate Transfer Price for such Subsequent Mortgage Loans shall not exceed the Pre-Funding Amount.

Subject to the conditions set forth in this Section 2.1(b), in consideration of the Securities Administrator's delivery on the related Transfer Date to the Depositor or its designee, or upon the order of the Depositor, of the aggregate Transfer Price for the related Subsequent Mortgage Loans from amounts on deposit in the Pre-Funding Account, the Depositor shall, on each Transfer Date, sell, transfer, assign, set over and otherwise convey to the Trustee, without recourse, but subject to the other terms and provisions of this Agreement, all of the right, title and interest of the Depositor in and to each Subsequent Mortgage Loan then being transferred (including all interest and principal thereon received with respect to such Subsequent Mortgage Loans on or after the related Subsequent Cut-off Date specified in the Transfer Supplement (other than any Retained Interest or any Prepayment Penalty Amounts) identified in the Addition Notice delivered by the Depositor on such Transfer Date and all items in the related Mortgage File.

In connection therewith, the Depositor shall amend the Mortgage Loan Schedule to reflect the inclusion of each such Subsequent Mortgage Loan in Pool 1 as part of the assets of the Trust Fund.  The Depositor shall promptly deliver to the Trustee, the Custodian, the Securities Administrator and the Master Servicer a copy of the Mortgage Loan Schedule as so amended.

Concurrently with the execution and delivery of each Transfer Supplement, the Depositor does hereby assign to the Trustee all of its rights and interest under the Sale Agreement with respect to the Subsequent Mortgage Loans.  The Trustee hereby accepts such assignment, and shall be entitled to exercise all the rights of the Depositor under the Sale Agreement as amended by the related Transfer Supplement as if, for such purpose, it were the Depositor.  The foregoing sale, transfer, assignment, set-over, deposit and conveyance does not and is not intended to result in creation or assumption by the Trustee of any obligation of the Depositor, the Seller, or any other Person in connection with the Subsequent Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth herein.

The Depositor shall on any Transfer Date transfer to the Trustee the applicable Subsequent Mortgage Loans and the other property and rights related thereto described in the immediately preceding paragraphs, as applicable, and the Trustee shall purchase such Subsequent Mortgage Loans for the purchase price specified in the related Transfer Supplement, property and rights only upon the satisfaction of each of the following conditions on or prior to the related Transfer Date:

(i)      immediately prior to such Transfer Date, the Pre-Funding Amount in the Pre-Funding Account shall equal or exceed the aggregate Transfer Price of the related Subsequent Mortgage Loans;

(ii)      the Depositor shall have delivered to the Trustee, with a copy to the Master Servicer and the Securities Administrator, a copy of a duly executed Transfer Supplement with respect to the Subsequent Mortgage Loans entered into between the Depositor and the Seller, in the form of Schedule B to the Sale Agreement;

(iii)      at least two (2) Business Days prior to the related Transfer Date, the Depositor shall have delivered to the Trustee, the Master Servicer, the Securities Administrator, each Rating Agency and the

Custodian an Addition Notice in the form of Exhibit P hereto identifying the Subsequent Mortgage Loans offered for sale to the Trustee;

(iv)      the remaining term to maturity of each Subsequent Mortgage Loan may not exceed 360 months;

(v)       each Subsequent Mortgage Loan shall be not more than 30 days Delinquent in payment as of the applicable Subsequent Cut-off Date;

(vi)      each Subsequent Mortgage Loan shall qualify as a "qualified mortgage" for purposes of the REMIC Provisions;

(vii)     to the Seller's knowledge, no Subsequent Mortgage Loan shall have been selected in a manner materially adverse to Certificateholders;

(viii)    the Subsequent Mortgage Loans to be transferred on such Transfer Date shall satisfy substantially the same representations and warranties applicable to the Initial Mortgage Loans in Pool 1 as set forth in the Sale Agreement;

(ix)      the Depositor shall have delivered to the Trustee and the Securities Administrator a letter from each Rating Agency stating that the addition of the Subsequent Mortgage Loans will not result in the reduction, qualification or withdrawal of the then current ratings of the Certificates;

(x)       no Subsequent Mortgage Loan shall have a combined Loan-to-Value Ratio greater than 100.00%;

(xi)      each Subsequent Mortgage Loan shall be underwritten substantially in accordance with the applicable originator's underwriting guidelines;

(xii)     the Depositor shall have delivered to the Trustee, the Master Servicer, the Securities Administrator and each Rating Agency such additional information reasonably requested by any of them with respect to the Subsequent Mortgage Loans to be sold to the Trustee on the Transfer Date;

(xiii)    as of each Transfer Date, neither the Depositor nor the Seller shall be insolvent, nor will either of them be made insolvent by such transfer;

(xiv)     the Pre-Funding Period shall not have ended;

(xv)      after giving effect to the acquisition of any Subsequent Mortgage Loans on any Transfer Date, the weighted average Mortgage Rate for all the Mortgage Loans shall not be lower than 7.600%, and the weighted average Mortgage Rate for the Pool 1 Mortgage Loans shall not be lower than 7.500%;

(xvi)     after giving effect to the acquisition of any Subsequent Mortgage Loans on any Transfer Date, the proportion of all Mortgage Loans with interest only payments shall not exceed 24.00%, and the proportion of Pool 1 Mortgage Loans with interest only payments shall not exceed 30.00%;

(xvii)    the Servicer shall have deposited in the applicable custodial account on the Transfer Date all collections in respect of the Subsequent Mortgage Loans received after the related Subsequent Cut-off Date; and

(xviii)   the Depositor shall have delivered to the Securities Administrator and the Trustee an Officer's Certificate confirming the satisfaction of each condition precedent specified in this paragraph and opinions of counsel with respect to corporate, bankruptcy and tax matters relating to the transfer of Subsequent Mortgage Loans in the forms substantially similar to those delivered on the Closing Date.

(c)

In connection with such transfer, the Depositor has delivered or caused to be delivered to the Trustee (or the Custodian acting on the Trustee's behalf) for the benefit of the Certificateholders the following documents or instruments (collectively, the "Mortgage Loan Documents") with respect to each Mortgage Loan so transferred (as to each, a "Mortgage File"):

(i)      (A) the original Mortgage Note endorsed by manual or facsimile signature to the Trustee or in blank, without recourse, with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (the "Last Endorsee") (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); or

(B) with respect to any Lost Mortgage Note, a lost note affidavit from the Depositor stating that the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note;

(ii)      except with respect to any Cooperative Loan, the original recorded Mortgage or a copy of such Mortgage certified by the Seller, the originating lender, settlement agent, or escrow company as being a true and complete copy of the Mortgage;

(iii)      except with respect to any Cooperative Loan and any MERS Mortgage Loans and except with respect to any Mortgage Loan for which the related Mortgage names the originating lender as beneficiary or mortgagee, either (A) a duly executed assignment of the Mortgage in blank, or (B) an original recorded assignment of the Mortgage from the Last Endorsee to the Trustee or a copy of such assignment of Mortgage certified by the Depositor, the originating lender, settlement agent, or escrow company as being a true and complete copy thereof which in either case may be included in a blanket assignment or assignments;

(iv)      except with respect to any Cooperative Loan and any MERS Mortgage Loans, each interim recorded assignment of such Mortgage, or a copy of each such interim recorded assignment of Mortgage certified by the Depositor, the originating lender, settlement agent, or escrow company as being a true and complete copy thereof;

(v)      the original or copies of each assumption, modification, written assurance or substitution agreement, if any;

(vi)      except with respect to any Cooperative Loan, either the original or duplicate original title policy (including all riders thereto) with respect to the related Mortgaged Property, if available, *provided* that the title policy (including all riders thereto) will be delivered as soon as it becomes available, and if the title policy is not available, and to the extent required pursuant to the second paragraph below or otherwise in connection with the rating of the Certificates, a written commitment or interim binder or preliminary report of the title issued by the title insurance or escrow company with respect to the Mortgaged Property; and

(vii)      in the case of a Cooperative Loan, the originals of the following documents or instruments (in addition to the documents required by clauses (i) and (iii) above):

(A)      The Cooperative Shares, together with a stock power in blank;

(B)      The executed Security Agreement;

(C)      The executed Proprietary Lease;

(D)      The executed Recognition Agreement;

(E)      The executed UCC original financing statement with evidence of recording thereon; and

(F)     Executed UCC amendments or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken line from the mortgagee to the Trustee (or in blank) with evidence of recording thereon (or in a form suitable for recordation).

In the event that with respect to any Mortgage Loan the Depositor cannot deliver (a) the original recorded Mortgage or (b) any recorded assignments or interim assignments satisfying the requirements of clause (iii) or (iv) above, respectively, concurrently with the execution and delivery hereof because such document or documents have not been returned from the applicable public recording office, the Depositor shall deliver such documents to the Custodian on behalf of the Trustee as promptly as possible upon receipt thereof and, in any event, within 720 days following the Closing Date (or, in the case of a Subsequent Mortgage Loan, the Transfer Date).  The Depositor or the Servicer shall forward or cause to be forwarded to the Custodian on behalf of the Trustee (a) from time to time additional original documents evidencing an assumption or modification of a Mortgage Loan and (b) any other documents required to be delivered by the Depositor or the Servicer to the Trustee or the Custodian.  In the case where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, the Depositor shall deliver to the Trustee or the Custodian a copy of such Mortgage certified (to the extent such certification is reasonably obtainable) by such public recording office to be a true and complete copy of the original recorded Mortgage.

In addition, in the event that with respect to any Mortgage Loan the Depositor cannot deliver the original or duplicate original lender's title policy (together with all riders thereto), satisfying the requirements of clause (vi) above, concurrently with the execution and delivery hereof because the related Mortgage or a related assignment has not been returned from the applicable public recording office, the Depositor shall promptly deliver to the Custodian on behalf of the Trustee such original or duplicate original lender's title policy (together with all riders thereto) upon receipt thereof from the applicable title insurer, and in any event, within 720 days following the Closing Date (or, in the case of a Subsequent Mortgage Loan, the Transfer Date).

Subject to the immediately following sentence, as promptly as practicable subsequent to the transfer pursuant to clause (a) of this Section 2.1, and in any event within 30 days thereafter, the Servicer, at the expense of the Depositor, shall as to any Non-MERS Mortgage Loan with respect to which the Depositor delivers an assignment of the Mortgage in blank pursuant to clause (b)(iii)(A) of this Section 2.1, (i) complete each such assignment of Mortgage to conform to clause (b)(iii)(B) of this Section 2.1, (ii) cause such assignment to be in proper form for recording in the appropriate public office for real property records, and (iii) cause to be delivered for recording in the appropriate public office for real property records each such assignment of the Mortgages, except that, with respect to any assignments of Mortgage as to which the Servicer has not received the information required to prepare such assignments in recordable form, the Servicer's obligation to do so and to deliver the same for such recording shall be as soon as practicable after receipt of such information and in any event within 30 days after receipt thereof.  Notwithstanding the foregoing, the Servicer need not cause to be recorded any assignment which relates to a Non-MERS Mortgage Loan with respect to which the Mortgaged Property is located in any state other than the Required Recordation States.

With respect to each MERS Mortgage Loan, the Servicer, at the expense of the Depositor, shall take such actions as are necessary to cause the Trustee to be clearly identified as the owner of each such Mortgage Loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS.

In the case of Mortgage Loans that have been prepaid in full as of the Closing Date (or, in the case of a Subsequent Mortgage Loan, the Transfer Date), the Depositor, in lieu of delivering the above documents to the Custodian on behalf of the Trustee, will deposit in the Custodial Account the portion of such payment that is required to be deposited in the Custodial Account pursuant to Section 3.5 hereof.

The Seller shall at its expense deliver to the Servicer copies of all trailing documents required to be included in the Mortgage File at the same time the originals or certified copies thereof are delivered to the Custodian on behalf of the Trustee, such documents to include but not be limited to the mortgagee policy of title insurance and any mortgage loan documents upon their return from the recording office.

Section 2.2    Acceptance by Trustee of the Mortgage Loans; Review of Documentation.

Subject to the provisions of Section 2.1, the Trustee acknowledges receipt of the assets transferred by the Depositor of the assets included in the Trust Fund and has directed that the documents referred to in Section 2.1 and all other assets included in the definition of "Trust Fund" be delivered to the Custodian on behalf of the Trustee.

The Custodian, by execution and delivery, hereof, and on behalf of the Trustee acknowledges receipt of the documents identified in the initial certification in the form annexed hereto as Exhibit C (the "Initial Certification") and the Custodian declares that it holds and will hold such documents and the other documents delivered to it constituting the Mortgage Files, and that the Custodian holds or will hold such other assets as are included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders and the NIMS Insurer, if any.

The Custodian agrees to execute and deliver on the Closing Date (or, in the case of Subsequent Mortgage Loans, the Transfer Date) to the Depositor, the Seller, the Master Servicer, the Servicer and the NIMS Insurer, if any, an Initial Certification in the form annexed hereto as Exhibit C.  Based on the Custodian's review and examination, and only as to the documents identified in such Initial Certification and subject to any exceptions noted in the schedule attached to such certification, the Custodian on behalf of the Trustee acknowledges that such documents appear regular on their face and relate to such Mortgage Loan.  Neither the Trustee nor the Custodian shall be under any duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded in the real estate records or that they are other than what they purport to be on their face.

Not later than 90 days after the Closing Date (or, in the case of Subsequent Mortgage Loans, within 90 days after the applicable Transfer Date), the Custodian shall deliver to the Depositor, the Seller, the Master Servicer, the Servicer and the NIMS Insurer, if any, a Final Certification in the form annexed hereto as Exhibit D, with any applicable exceptions noted thereon.  Notwithstanding anything to the contrary contained herein, in the event there are exceptions to the Final Certification, the Custodian may transmit such exceptions electronically (via email) to the Depositor, the Seller, the Master Servicer, the Servicer, the Trustee and the NIMS Insurer, if any, subject to the prior approval of the Depositor, the Seller, the Master Servicer, the Servicer, the Trustee and the NIMS Insurer, if any.

If, in the course of such review, the Custodian on behalf of the Trustee finds any document constituting a part of a Mortgage File which does not meet the requirements of Section 2.1 hereof (the "Mortgage Loan Document Requirements"), the Custodian shall list such as an exception in the Final Certification; *provided, however,* that neither the Trustee nor the Custodian shall make any determination as to whether (i) any endorsement is sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note or (ii) any assignment is in recordable form or is sufficient to effect the assignment of and transfer to the assignee thereof under the mortgage to which the assignment relates. The Seller shall promptly correct or cure such defect within 90 days from the date it was so notified of such defect and, if the Seller does not correct or cure such defect within such period, the Seller shall either (a) substitute for the related Mortgage Loan a Qualified Substitute Mortgage Loan, which substitution shall be accomplished in the manner and subject to the conditions set forth in Section 2.3 hereof, or (b) purchase such Mortgage Loan from the Trustee within 90 days from the date the Seller was notified of such defect in writing at the Purchase Price of such Mortgage Loan; *provided, however,* that in no event shall such substitution or purchase occur more than 540 days from the Closing Date, except that if the substitution or purchase of a Mortgage Loan pursuant to this provision is required by reason of a delay in delivery of any documents by the appropriate recording office, and there is a dispute between either the Servicer or the Seller and the Trustee over the location or status of the recorded document, then such substitution or purchase shall occur within 720 days from the Closing Date.  Any such substitution pursuant to (a) above shall not be effected prior to the delivery to the Trustee and the NIMS Insurer, if any, of the Opinion of Counsel required by Section 2.4 hereof, if any, and any substitution pursuant to (a) above shall not be effected prior to the additional delivery to the Trustee of a Request for Release substantially in the form of Exhibit J.  No substitution is permitted to be made in any

calendar month after the Determination Date for such month.  The Purchase Price for any such Mortgage Loan shall be deposited by the Seller in the Collection Account on or prior to the Deposit Date for the Distribution Date in the month following the month of repurchase and, upon receipt of written certification from the Servicer of such deposit, the Trustee shall cause the Custodian to release the related Mortgage File to the Seller and shall execute and deliver at the Seller's request such instruments of transfer or assignment prepared by the Seller, in each case without recourse, as shall be necessary to vest in the Seller, or a designee, the Trustee's interest in any Mortgage Loan released pursuant hereto.  The foregoing remedy against the Seller for failure to deliver Mortgage Loans that satisfy the Mortgage Loan Document Requirements is provided in the Sale Agreement (which, in turn, has been assigned to the Trustee pursuant to Section 2.1 hereof).

The Custodian shall retain possession and custody of each Mortgage File in accordance with and subject to the terms and conditions set forth herein.  The Servicer shall promptly deliver to the Custodian on behalf of the Trustee, upon the execution or receipt thereof, the originals of such other documents or instruments constituting the Mortgage File as come into the possession of the Servicer from time to time.

It is understood and agreed that the obligation of the Seller to substitute for or to purchase any Mortgage Loan which does not meet the requirements of Section 2.1 hereof shall constitute the sole remedy respecting such defect available to the Trustee, any Certificateholder and the NIMS Insurer, if any, against the Depositor or the Seller.

Section 2.3     Representations, Warranties and Covenants of the Servicer, the Master Servicer, the Seller and the Depositor.

(a)     The Servicer represents and warrants to the Master Servicer, the Securities Administrator, the Depositor, the Seller and the Trustee, for the benefit of the Certificateholders and the NIMS Insurer, if any, that, as of the Closing Date or the applicable Transfer Date, in the case of Subsequent Mortgage Loans:

(i)     the Servicer is a duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization and has, and had at all relevant times, full corporate power to service the Mortgage Loans, to own its property, to carry on its business as presently conducted and to enter into and perform its obligations under this Agreement.  The Servicer has all necessary licenses and is qualified to transact business in and is in good standing under the laws of each state where any Mortgaged Property is located or is otherwise exempt under applicable law from such qualification or is otherwise not required under applicable law to effect such qualification and no demand for such qualification has been made upon the Servicer by any state having jurisdiction;

(ii)     the execution and delivery of this Agreement by the Servicer and the performance by it and compliance with the terms of this Agreement will not (A) violate the Servicer's charter or by-laws or constitute a default (or an event which, with notice or lapse of time or both, would constitute a default) under, or result in the breach or acceleration of, any material contract, agreement or other instrument to which the Servicer is a party or which may be applicable to the Servicer or any of its assets or (B) result in the creation or imposition of any lien, charge or encumbrance upon any of its properties pursuant to the terms of any such contract, agreement or other instrument;

(iii)     the Servicer has the full power and authority to enter into and consummate all transactions contemplated by this Agreement to be consummated by it, has duly authorized the execution, delivery and performance of this Agreement, and has duly executed and delivered this Agreement.  This Agreement, assuming due authorization, execution and delivery by the other parties hereto, constitutes a valid, legal and binding obligation of the Servicer, enforceable against it in accordance with the terms hereof, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, receivership, moratorium or other similar laws relating to or affecting the rights of creditors generally, and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law);

(iv)

IN WITNESS WHEREOF, the Depositor, the Seller, the Master Servicer, the Servicer, the Custodian, the Securities Administrator, the Credit Risk Manager and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

AEGIS ASSET BACKED SECURITIES CORPORATION,
as Depositor

By:  /s/  Pat Walden
      Name:  Pat Walden
      Title:   President

AEGIS MORTGAGE CORPORATION,
as Seller

By:  /s/  Pat Walden
      Name:  Pat Walden
      Title:   President

WELLS FARGO BANK, N.A.,
as Master Servicer

By:  /s/  Stacey Taylor
      Name:  Stacey Taylor
      Title:   Vice President

WELLS FARGO BANK, N.A.,
as Securities Administrator

By:  /s/  Stacey Taylor
      Name:  Stacey Taylor
      Title:   Vice President

OCWEN LOAN SERVICING, LLC,
as Servicer

By:  /s/  Richard Delgado
      Name:  Richard Delgado
      Title:   Senior Vice President

WELLS FARGO BANK, N.A.,
as Custodian

By:  /s/  Stacey Taylor
      Name:  Stacey Taylor

Title:   Vice President

MORTGAGERAMP, INC.,
as Credit Risk Manager


By:   /s/  D. Keith Gettmann
     Name:  D. Keith Gettmann
     Title:   EMD

WACHOVIA BANK, NATIONAL ASSOCIATION,
not it its individual capacity but solely as Trustee


By:   /s/  Patricia O'Neill-Manella
     Name:  Patricia O'Neill-Manella
     Title:   Vice President

Schedule I

MORTGAGE LOAN SCHEDULE